Joseph L. HALL and Elizabeth H. Hall, Plaintiffs-Appellants,†

v.

TURTLE LAKE LIONS CLUB and Royal Insurance Company of America, Defendants-Respondents.

Court of Appeals

*No. 87–2214. Submitted on briefs June 29, 1988.—Decided September 13, 1988.*

(Also reported in 431 N.W.2d 696.)

† Petition to review denied.

For plaintiffs-appellants there were briefs by *Lila Hambleton* and *Doar, Drill & Skow, S.C.,* Baldwin.

For defendants-respondents there was a brief by *Michael A. Schumacher* and *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.,* Eau Claire.

Before Cane, P.J., LaRocque and Sundby, JJ.

LaROCQUE, J. Joseph Hall and his wife, Elizabeth, appeal a summary judgment dismissing a claim for personal injuries inflicted when Joseph stepped in a hole on the grounds of the Turtle Lake Village Park during a fair sponsored by the Turtle Lake Lions Club. The circuit court concluded that the Lions Club had immunity under sec. 895.52, Stats., as a "landowner" who allowed Hall entry for "recreational activity." We affirm.

■

On review of a summary judgment, the court of appeals applies the same methodology as the trial court and no deference is paid to the decision of the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The burden is on the party moving for summary judgment. *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 292 N.W.2d 473, 477 (1980).

Section 895.52(2) (b), provides that:

> no owner ... is liable for any injury to ... a person engaging in a recreational activity on the owner's property ....

Section 895.52(1) (g) defines "recreational activity" as:

> any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, [and] includes, but is not limited to, ... nature study, ... sightseeing,

... and any other outdoor sport, game or educational activity ....

Section 1 of Wis. Act 418, effective May 15, 1984, discusses the intended scope of sec. 895.52:

> While it it not possible to specify in a statute every activity which might constitute a recreational activity, *this act provides examples of the kinds of activities that are meant to be included, and* the legislature intends that, *where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners* to protect them from liability. This act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act. (Emphasis supplied.)

We conclude that a fair is "substantially similar" to several "examples of the kinds of activities" enumerated in the definition of recreational activity: "nature study," "sight-seeing," as well as the generic phrase "any other ... educational activity."

Hall describes the Lions Club event as a "hometown fair ... an agricultural show involving 125 head of cattle, carnival rides and booths, food and beer concessions, and a demolition derby." The Halls struggle valiantly to distinguish the fair from the statutorily immune activities. They argue, for example, that "Maybe seeing 125 head of cattle would be educational to somebody from the city, but around Turtle Lake that's how they make their living." Ultimately the Halls' arguments fail in view of the liberal construction mandated by the statute.

Although this section was first created in 1984, the idea of limiting landowner liability for recreational use is not new. Wisconsin enacted its first recreational use statute, sec. 29.68, Stats., in 1963. That section was repealed by the current legislation. Several Wisconsin cases and various scholarly works have outlined the legislative history of state recreational use acts in Wisconsin and nationally.[1] Wisconsin was one of the earliest states to enact a form of this law, *LePoidevin v. Wilson*, 111 Wis. 2d 116, 131 n. 8, 330 N.W.2d 555, 563 n. 8 (1983), and at last count forty-seven states had adopted some form of recreational use statute. Prosser & Keeton, *supra* note 1, at 68 n. 46 (West Supp. 1984). The impetus for this law is the continual shrinkage of the public's access to recreational land in the ever more populated modern world. *See* Comment, *supra* note 1, at 320–21.

The Halls argue further, however, that even if the fair qualified for immunity, because he took a break from fair activities and was walking to the men's restroom when the accident occurred he was not engaged in recreational activity. This ordinary, necessary, and momentary diversion while still on the fair grounds certainly does not remove the landowner from the protection of the statute, and we summarily reject this argument.

Finally, the Halls maintain that the Lions Club was not an "owner." Section 895.52(1) (d) defines an owner as follows:

---

[1]*See Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 691–93, 317 N.W.2d 468, 471–72 (1982); *Goodson v. City of Racine,* 61 Wis. 2d 554, 213 N.W.2d 16 (1973); Prosser & Keeton on the Law of Torts, sec. 60 (5th ed. 1984); Comment, *Wisconsin's Recreational Use Statute: A Critical Analysis,* 66 Marq. L. Rev. 312 (1983); Note, *Torts—Statutes—Liability of Landowner to Persons Entering for Recreational Purposes,* 1964 Wis. L. Rev. 705.

"Owner" means either of the following:

1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies a property.

2. A governmental body or nonprofit organization that has a recreational agreement with another owner.

Section 895.52(1) (h) defines a "recreational agreement" as follows:

"Recreational agreement" means a written authorization granted by an owner to a governmental body or nonprofit organization permitting public access to all or a specified part of the owner's property for any recreational activity.

The property in question was titled in the Village of Turtle Lake, and the Lions Club had no written agreement with the village. Nevertheless, when a third party such as the Lions Club produces a fair on the land of another, it "occupies" the land within the intended definition. The Halls attempt to distinguish *Smith v. Sno Eagles Snowmobile Club, Inc.*, 823 F.2d 1193 (7th Cir. 1987), a federal decision construing the word "occupant" under former sec. 29.68 to include a snowmobile club that constructed and groomed trails on the land of another. The Halls note that the former statute provided in part:

An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others ....

While it is true that the statutory language has been changed in sec. 895.52 (1)(d), an owner still includes one who "occupies a property." We therefore adopt the language found in *Smith*:

490

> [O]ccupant include[s] persons who, while now own-
> ers or tenants, have the actual use of land. ...
> While "occupant" includes [an] owner and lessee, it
> also means one who has the actual use of property
> without legal title, dominion or tenancy. In order
> to give meaning to [occupies], the term should be
> interpreted to encompass a resident of land who is
> more transient than either a lessee or an owner.

*Id.* at 1197 (quoting *Smith v. Sno Eagles Snowmobile Club, Inc.,* 625 F. Supp. 1579, 1582 (E.D. Wis. 1986)).

The Halls argue that this interpretation of the statute renders the reference to a recreational agreement superfluous. We disagree. An organization that neither leases nor physically occupies land may qualify as an owner by virtue of a written agreement. Our construction of the statute does not render sec. 895.52(1) (d) 2 superfluous.

*By the Court.*—Judgment affirmed.