89–CV–429  David William LINVILLE, Sr. and Estate of
David Linville, Jr., Plaintiffs-Appellants,

v.

CITY OF JANESVILLE, David Moore, Gary Myers, Paul
Bloom, Stephen Dorsey, Wes Meacham, Dennis Witek,
Kenneth Bollinger, Arthur Stearns, Larry Grorud,
The City's and Village's Mutual Insurance Company,
ABC Fireman, DEF Policemen, GHI Paramedics, XYZ
Insurance Company and QQQ Insurance Company,
Defendants-Respondents.

89–CV–606  Kelly C. LINVILLE and CPC Greenbrier
Hospital, Plaintiffs-Appellants,

v.

CITY OF JANESVILLE, Paul Bloom, Dennis Witek, Ken-
neth Bollinger, Larry Grorud, Stephen Dorsey, West
Meacham, Arthur Stearns, The City's and Village's
Mutual Insurance Company, XYZ Insurance Company
and QQQ Insurance Company, Defendants-
Respondents-Petitioners.

Supreme Court

*No. 91–1099. Oral argument January 6, 1994.—Decided June
15, 1994.*

(Also reported in 516 N.W.2d 427.)

705

706

708

For the defendants-respondents-petitioners there were briefs by *Thomas J. Basting, Sr., Margery M. Tibbetts* and *Brennan, Steil, Basting & MacDougall, S.C.,* Janesville and oral argument by *Thomas J. Basting.*

For the plaintiffs-appellants there was a brief by *Michael E. McMorrow,* Elm Grove and oral argument by *Michael E. McMorrow.*

Amicus curiae brief was filed by *Charles D. Hoornstra,* assistant attorney, with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Claire Silverman,* Madison for the League of Wisconsin Municipalities.

Amicus curiae brief was filed by *Eugene O. Gehl* and *Foley & Lardner,* Madison for the Wisconsin Municipal Mutual Insurance Company.

Amicus curiae brief was filed by *Saul N. Winsten* and *Michael, Best & Friedrich,* Milwaukee for the Wisconsin Park & Recreation Association.

WILLIAM A. BABLITCH, J. The defendants City of Janesville (City) and the City's paramedics[1] seek review of a published court of appeals' decision[2] which denied them immunity from liability under the recreational immunity statute[3] for claims arising from

---

[1] The plaintiffs' complaints named the Janesville police officers, paramedics, and firefighters. The question in this case involves those named defendants who performed rescue and medical services. These include both firefighters and paramedics. We will refer to them collectively as "paramedics."

[2] *Linville v. City of Janesville,* 174 Wis. 2d 571, 497 N.W.2d 465 (Ct. App. 1993).

[3] The applicable provisions of sec. 895.52, Stats., provide:

**Recreation activities; limitation of property owners' liability. (1) Definitions.** In this section:

(a) 'Governmental body' means any of the following:

. . .

3. A county or municipal governing body . . ..

. . .

(b) 'Injury' means an injury to a person or to property.

. . .

(d) 'Owner' means either of the following:

1. A person, including a governmental body . . . that owns, . . . property.

(g) 'Recreational activity' means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. 'Recreational activity' includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sightseeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

. . .

**(2) No duty; immunity from liability.**

. . .

a drowning at the City's pond. The court of appeals determined that Kelly Linville and her four-year-old son David were not engaged in a recreational activity at the time of David's drowning. Accordingly, the court determined the City and the paramedics were not immune under the statute. We disagree with the court of appeals that Kelly and David were not engaged in a recreational activity at the time of the drowning. Although Kelly Linville did not want to be at the Pond, her subjective intent is not controlling. The intrinsic nature of the activity at the time, i.e., looking at the fishing spots in preparation for fishing the next day, was recreational. We agree with the court of appeals, however, that the City and paramedics are not immune under the recreational immunity statute from claims of negligent rescue and treatment. We conclude that in furnishing rescue and medical treatment the City was acting independent of its functions as owner of recreational land and that its public paramedic services rendered in this case were unrelated to the City's role as owner of the Pond. The City's immunity for its functions as owner of recreational land cannot shelter its liability for negligently performing another function. Accordingly, we affirm the decision of the court of appeals.

Finally, we address the Linvilles' argument that the statutory ceiling on damages of $50,000 for suing a governmental body or its employees is inapplicable. We conclude the statutory ceiling is applicable.

The facts are as follows: On November 12, 1989, Walter Hadden (Hadden) drove Kelly Linville (Kelly)

(b)  Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property . . ..

and her four-year-old son David in a van to the Kiwanis Pond (Pond) in Janesville to show David where Hadden would take him fishing the next day. The Pond is owned by the City and is used for recreational purposes. Although Kelly accompanied Hadden in the van, she deposed that she was taken to the Pond against her will and that she repeatedly argued with Hadden asking him to take her and David home. According to Kelly, Hadden ignored her requests and instead parked at the edge of the water and shined the van lights on the water to illuminate a good fishing area. After several minutes at the Pond, Hadden attempted to back the van up but the van was stuck in the mud. Realizing they were stuck Kelly got out of the van in a vain attempt to push it backwards. Instead of backing up, the van jumped forward into the Pond and sank with Hadden and David inside of it. After several unsuccessful attempts to rescue her son and Hadden, Kelly ran for help.

The City fire and police officers and the paramedics arrived at the Pond in various intervals and eventually pulled the van out of the water. The paramedics resuscitated David and then transported him to a hospital where he died several hours later. Hadden also died from drowning.

Kelly Linville and David's father individually and as special administrator of David's estate (Linvilles) brought separate actions, later consolidated, against the City and several city employees including the paramedics. The complaints alleged that the City and paramedics were negligent in their rescue of David and negligent in providing medical services to David. The circuit court dismissed the actions on a motion for summary judgment. The court stated that the pleadings raised the issue of whether or not the City and

paramedics were negligent. The court found the City and paramedics immune from negligence as a matter of law, however, under the recreational immunity statute and the governmental immunity statute,[4] and thus granted summary judgment in favor of the City and paramedics.

The court of appeals affirmed in part and reversed in part. With respect to the recreational immunity statute, the court found that it did not immunize the City and paramedics from liability since Kelly and David Linville were not engaged in a recreational activity within the meaning of the statute. *Linville,* 174 Wis. 2d 571. In its analysis the court stated that it was applying an objective test to determine whether Kelly Linville was engaged in a recreational activity at the time of the drowning. *Id.* at 579. In framing the test the court stated:

> The test requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling (cites omitted). Thus, whether the injured person intended to recreate is not dispositive, (cites omitted), but why he was on the property is pertinent. (cites omitted) *Id.* at 579–80.

When applying the test to Kelly and David Linville, however, the court focused solely on Kelly's intent and found that since Kelly was at the Pond against her will, she was not engaged in a recreational activity under the statute. *Id.* at 580. The court then imputed Kelly's intent to her infant son David and found that he also was not engaged in a recreational activity for purposes

---

[4] Section 893.80, Stats.

of immunity. *Id.* In light of these conclusions, the court held that none of the defendants enjoyed recreational immunity under sec. 895.52, Stats. *Id.* at 582.

The City and paramedics petitioned for review of the court of appeals' decision. Specifically, they requested that we (1) state the proper test to be applied in determining whether an injured person is engaged in a recreational activity within the meaning of the statute and (2) determine whether Kelly and David Linville were engaged in a recreational activity within the meaning of the statute so as to immunize the City and paramedics from liability. We granted the petition.

We review the circuit court's grant of summary judgment by applying the standards set forth in sec. 802.08(2), Stats., in the same manner as the circuit court. *Shannon v. Shannon,* 150 Wis. 2d 434, 441, 442 N.W.2d 25 (1989). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Section 802.08(2).

## I.

The issue we address is whether the City and paramedics are immune from negligence claims under the recreational immunity statute. In doing so, we must first state the appropriate test to be applied in determining whether Kelly and David Linville's activity at the Pond falls within the "recreational activity" covered by the statute.

The purpose behind sec. 895.52, Stats., is found in the statement of legislative intent in 1983 Wis. Act 418:

**Legislative intent.** The legislature intends by this act to limit the liability of property owners towards others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.

The policy behind the statute is to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence. *See* Stuart J. Ford, Comment, *Wisconsin's Recreational Use Statute: Towards Sharpening The Picture At The Edges,* 1991 Wis. L. Rev. 491. In order to achieve the goal of encouraging property owners to open their lands to public recreation by limiting the liability of property owners, courts must liberally construe the statute in favor of property owners.

In doing so, we find that any test which considers the land user's intent as dispositive would contravene the goal of the statute: persons hurt while using the land would defend against recreational immunity by claiming he or she had no intent to "recreate." In turn, landowners would feel more susceptible to litigation and thus less likely to open their lands for recreation. Such a result would also force landowners to litigation

715

to defend an action when the legislature intended to grant them immunity.

A test which is consistent with the purpose of the statute is one which considers the purpose and nature of the activity in addition to the user's intent. Such a test was adopted by the court of appeals in this case:

> The test requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling. (cites omitted) Thus, whether the injured person intended to recreate is not dispositive, (cites omitted), but why he was on the property is pertinent. (cites omitted) *Linville,* 174 Wis. 2d at 579–80.

We conclude the court of appeals correctly stated the test. Appropriately, it requires that a court give primary consideration to the nature and purpose of the activity without being controlled by the property user's subjective intent. Such a requirement comports with the focus of the statute which is the user's activity rather than the user's state of mind. The test also furthers the goal of the recreational immunity statute: it encourages land owners to open their land by according them a degree of certainty regarding their potential liability for injuries occurring on their land.

The Linvilles argue that the statute is ambiguous with regard to the requisite state of mind for the user. They claim that the term "undertaken" found in sec. 895.52(1)(g), Stats., could be interpreted to mean voluntarily undertaken or involuntarily undertaken. They contend that such ambiguity results in a violation

of due process. We find no merit in this argument. "Undertake" simply means "to engage in"; "to enter upon"; or to "set about." BLACK'S LAW DICTIONARY 1526 (6th ed. 1990). Kelly Linville was engaged in the same activity as Hadden: looking at the Kiwanis Pond in preparation for fishing the following day.

Utilizing this test, we determine that Kelly Linville and her son David were engaged in a recreational activity at the time of the drowning. It is undisputed that Hadden, Kelly, and David were at the Pond to look at fishing areas and to prepare for fishing the next day. Fishing is an activity enumerated in the statute and activities in preparation of fishing have been characterized as "recreational activit[ies]." *See Sauer v. Reliance Insurance Company,* 152 Wis. 2d 234, 240, 448 N.W.2d 256 (Ct. App. 1989) (holding that " 'walking down the river to go fishing' " was a recreational activity). Further, fishing is intrinsically a recreational activity: people fish for relaxation and enjoyment. Although Kelly deposed that she did not want to be at the park, her intent is not dispositive under the test we adopt above. The facts crucial to our determination are that she was at a recreational facility which is open for public use, looking at potential fishing areas in the Pond. From this we conclude that she was engaged in a recreational activity as defined by the statute.

## II.

The determination that Kelly and David's activity at the Pond was recreational, however, does not resolve this case. Next we must address the Linvilles' claim that the immunity granted by sec. 895.52(2)(b), Stats., does not apply to the City's paramedics in their capacity as rescuers and medical providers and to the City as

717

their employer. The City and paramedics assume that a threshold conclusion that the Linvilles were engaged in a recreational activity at the time of the drowning affirmatively answers this second question. It does not.

Section 895.52(2)(b), Stats., provides in part:

> Except as provided in subs. (3) to (6), no owner and no . . . employe . . . of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property.

We must determine whether this statute immunizes the paramedics and the City simply because the paramedics are employees of the City which owns the Pond. Our examination of the focus of the statute, the purpose behind the statute, and the absurd consequences that would result if we were to grant immunity under these circumstances, convince us that the statute does not immunize the paramedics or the City as their employer.

The legislature, in sec. 895.52, Stats., granted immunity to landowners with respect to the condition of the land and to the landowners' (or its employees') actions with respect to the land. *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 472–76, 464 N.W.2d 654 (1991). Therefore, in order to be consistent with the focus of the statute, our focus here should be on whether the City as employer of the paramedics is, in the eyes of the law, the same entity that owns the Pond.

Requiring that the same entity be the owner of the land and the employer of those persons who negligently cause the injury under the law is consistent with the purpose behind the recreational immunity statute. The statute was meant to encourage landowners to open up their lands for recreational activity by limiting liability through a grant of immunity. *Copeland v. Larson,* 46

Wis. 2d 337, 344, 174 N.W.2d 745 (1970); *see also* Stuart J. Ford, Comment, *Wisconsin's Recreational Statute: Towards Sharpening The Picture At The Edges,* 1991 Wis. L. Rev. 491. The benefits of granting immunity, i.e., encouraging landowners to open their lands to the public, comes from immunizing people or municipalities in their capacities as landowners, and the actions of their employees whose employment is directly connected to the land. Extending immunity to landowners for negligently performing in a capacity unrelated to the land or to their employees whose employment activities have nothing to do with the land will not contribute to a landowner's decision to open the land for public use.

In addition, granting immunity to the landowner when the landowner and the employer of the negligent employee are functioning in two different capacities and are therefore not the same entity in the eyes of the law would produce absurd consequences. In *Ervin,* we stated that the statute was intended to "shif[t] some of the risk of injury from the landowner to the entrant." 159 Wis. 2d at 477. But it "was not enacted to provide indiscriminate immunity for landowners without regard to possible consequences." *Id.* To interpret the language of sec. 895.52(2)(b), Stats., to include injury resulting from negligent rescue and treatment by the paramedics in this case, would produce absurd consequences.

Consider the hypothetical given to the defendants at oral argument. The defendants were asked if a health care provider employed by the City would be immune if he or she provided negligent medical care to David once David was transported to the hospital. The defendants answered that both the health care provider and the City as its employer would still be

immune under the statute. Their claim is that the immunity provided by the statute stems from the activity, and that the immunity spills over to negligent behavior by any City employee (regardless of their connection to the recreational land) who provides medical services to David for injuries sustained while recreating. Such services could conceivably take place days or even weeks after the recreational activity, at facilities far removed from the site of recreation, and by persons in no way connected to the land on which the accident occurred. Such a result is absurd, *see Estate of Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965) (stating that we are not to construe a statute so as to produce absurd results), leaves immunity limitless, and therefore could not have been intended by the legislature.

The more rational result, consistent with the focus and purpose of the statute, is to immunize from liability only the landowner who is the same entity under the law as the employer of the persons whose alleged negligence caused injury. We hold that the City as landowner and the City as employer of the paramedics are not the same entity for purposes of the recreational immunity statute, and therefore the City is not immune from liability for the negligence of its paramedic employees.

The City has two distinct roles here. First, it owns the Pond. In this role, it is entitled to immunity from suits claiming that the Pond was negligently maintained or that the City's or its employees' (whose employment is connected to the Pond) actions with respect to the Pond were negligent. Such immunity is illustrated in *Ervin,* 159 Wis. 2d 464, in which we determined that sec. 895.52(2), Stats., immunized the city of Kenosha from liability for negligently hiring and

improperly training lifeguards for its public beach on which two children drown.

On the other hand, the City operates its paramedic services for the public benefit of providing emergency medical treatment. It does not operate these services for any reason connected to the Pond. It is mere coincidence that the City is both owner of the Pond and provider of public rescue and medical treatment services. Further, the paramedics' employment, as employees of the City in this capacity, is unrelated to the Pond. The paramedics provide emergency medical treatment in every part of the City, no matter the situs. Thus the City's rescue attempts and medical treatment are separate and apart from the City's ownership of or activities as owner of recreational land. We therefore conclude that the City as the paramedics' employer is not immune from the Linvilles' claims of negligent rescue and medical treatment.

Accordingly, we affirm the court of appeals' denial of recreational immunity under sec. 895.52(2)(b), Stats., to the paramedics and the City for negligent rescue and treatment. In light of this conclusion, a genuine issue of fact exists with respect to whether the City and the paramedics were liable for negligent rescue and treatment of David, and therefore summary judgment was improperly granted by the circuit court.

III.

Finally, we address the Linvilles' argument that the ceiling on damages of $50,000 for suing a governmental body or its employees in sec. 893.80(3), Stats.,[5]

---

[5] Section 893.80(3), Stats., states in part:

721

is inapplicable. The Linvilles argue that sec. 146.35(11),[6] which required the City to provide adequate insurance for its paramedics, rendered the ceiling on damages inapplicable to actions against the paramedics and the City as their employer.[7] Thus, the Linvilles argue that the five million dollars the City carries in insurance should be available to them. We disagree.

The Linvilles cite to nothing in the legislative history of sec. 146.35(11), Stats., which would suggest an intent by the legislature to waive the statutory cap on damages for actions against paramedics. The Linvilles support their argument by quoting language from our decision in *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 377, 293 N.W.2d 504 (1980), *cert. denied,* 449 U.S. 1035 (1980), which states that the legislature, in setting ceil-

---

The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000 . . ..

[6] Section 146.35(11), Stats., was repealed by 1989 Wis. Act 102 § 27(m). That statute provided:

LIABILITY INSURANCE. The department shall, as a condition to the approval of any emergency medical services program . . . require adequate liability insurance sufficient to protect all emergency medical technicians—advanced (paramedics) . . . from civil liability resulting from the good faith performance of duties authorized under this section.

[7] The Linvilles also argue that when the legislature passed sec. 146.35(11), Stats., they intended to make the recreational immunity statute inapplicable to paramedics. They present nothing which would suggest to us that this is true, and thus we reject their argument.

ings on damages and classifying tort victims in different ways, has discretion to:

> [E]valuate the risks, the extent of exposure to liability, the need to compensate citizens for injuries, the availability of and cost of insurance, and the financial condition of the governmental units. It is the legislature's function to structure statutory provisions, which will protect the public interest in reimbursing the victim and in maintaining government services and which will be fair and reasonable to the victim and at the same time will be realistic regarding the financial burden to be placed on the taxpayers.

Their argument is unpersuasive. This language could easily be used to support an argument contrary to that of the Linvilles: that the legislature has the discretion to limit damages available in suits against governmental subdivisions to $50,000.

In addition, the Linvilles fail to address our decision in *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 403 N.W.2d 747 (1987), in which we held that a city's purchase of liability insurance in excess of the $50,000 statutory cap in sec. 893.80(3), Stats., did not waive the liability cap for municipal tortfeasors. We held that waiver occurs only if it is explicit in the language of the insurance policy. *Id.* at 131. The Linvilles provide no evidence which would indicate that waiver was intended.

*By the Court.*—The decision of the court of appeals is affirmed.