Bruce A. DOANE and Joanne M. Doane, Plaintiffs-Appellants,

STOUGHTON TRAILERS EMPLOYEE BENEFIT PLAN, Involuntary-Plaintiff,

v.

HELENVILLE MUTUAL INSURANCE COMPANY and Ronald W. Ehle, Defendants-Third-Party Plaintiffs-Respondents,

SKELGAS, INC. and Worthington Cylinder, Inc., Defendants-Appellants,

The COLEMAN COMPANY, INC., and Coleman Outdoor Products, Inc., Defendants,

v.

CONSOGAS, INC., Third-Party Defendant.

Court of Appeals

*No. 97–1420. Submitted on briefs December 16, 1997.—Decided January 29, 1998.*

(Also reported in 575 N.W.2d 734.)

On behalf of the plaintiffs-appellants and defendants-appellants, the cause was submitted on the briefs of *Jerome Konkel* of *Vlasak, Britton & Konkel, S.C.* of Milwaukee.

On behalf of the defendants-third-party-plaintiffs-respondents, the cause was submitted on the brief of *Daniel G. Jardine* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Madison.

Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Bruce and Joanne Doane and two product manufacturers appeal a summary judgment dismissing Ronald Ehle and his insurer from the Doanes' negligence action against Ehle and the product manufacturers. They claim the circuit court erred when it held that Ehle was immune from liability under Wisconsin's recreational immunity statute for an accident which occurred while Bruce Doane was ice fishing with Ehle in his portable shanty. Because we conclude that Ehle was not protected by Wisconsin's recreational immunity statute, we reverse the circuit court's judgment and remand the case for further proceedings.

## BACKGROUND

The facts relevant to the recreational immunity issue are not disputed on appeal.[1] On December 26, 1992, Ronald Ehle invited Bruce Doane to go ice fishing in his portable shanty on Lake Kegonsa. While they were fishing in the shanty, Ehle's liquid propane lantern exploded, burning Doane. The Doanes sued Ehle (who they alleged had negligently failed to maintain, inspect and/or construct the heater), Helenville Mutual Insurance Company (Ehle's insurer) and other companies and their insurers. Ehle and his insurer claimed immunity under § 895.52, STATS., and were granted summary judgment, dismissing them from the action. The Doanes and two of the companies appeal.

---

[1] There may be disputed issues of fact with regard to the negligence claims, but they are not before us.

## DISCUSSION

**Standard of Review.**

■

It is well established that this court applies the same summary judgment methodology as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it presents a material issue of fact or law. *Id.* If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *Id.* at 233, 568 N.W.2d at 34.

■

Here, the Doanes' complaint states a proper negligence claim, and Ehle's amended answer properly raises the defense of recreational immunity. As mentioned above, the facts are not disputed. Therefore, whether § 895.52, STATS., bars the Doanes' negligence lawsuit is a question of statutory interpretation, which we will review *de novo*. *Kosky v. International Ass'n of Lions Clubs*, 210 Wis. 2d 464, 471, 565 N.W.2d 260, 263 (Ct. App. 1997).

**Recreational Immunity Statute.**

*1. General Background.*

Wisconsin's recreational immunity statute was enacted "to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence." *Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427, 430 (1994); Stuart J. Ford, *Wisconsin's Recreational Use Statute: Towards Sharpening the Picture at the Edges*, 1991 WIS.L.REV. 491. Specifically, § 895.52(2), STATS., provides:

> NO DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
> 1. A duty to keep the property safe for recreational activities.
> 2. A duty to inspect the property, except as provided under s. 23.115(2).
> 3. A duty to give warning of an unsafe condition, use or activity on the property.
> (b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

An "owner" is defined as one who "owns, leases or occupies property." Section 895.52(1)(d), STATS. "Property" is defined as "real property and buildings, structures and improvements thereon, and the waters of the state,

as defined under s. 281.01(18)."[2] Section 895.52(1)(f), STATS. An occupant is one who has actual possession of the property, but is more transient than either a lessee or an owner with legal title. *Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 491, 431 N.W.2d 696, 698 (Ct. App. 1988) (citing *Smith v. Sno Eagles Snowmobile Club, Inc.*, 625 F.Supp. 1579, 1582 (E.D.Wis. 1986)). However, "occupancy," in the statutory sense, signifies a degree of permanence, as opposed to the mere use of the property in question. *Smith v. Sno Eagles Snowmobile Club*, 823 F.2d 1193, 1197 (7th Cir. 1987).

## 2. *The Doanes' Claim.*

Generally, the first question to be addressed in analyzing a recreational immunity defense is whether the injured party was engaged in a recreational activity. However, here, no one disputes that Doane was engaged in a recreational activity at the time of his injury. Indeed, fishing is a recreational activity which is specifically enumerated in the statute.[3] *Linville*, 184 Wis. 2d at 717, 516 N.W.2d at 431. Rather, the parties'

---

[2] Section 281.01(18), STATS., defines waters of the state in a manner which encompasses Lake Kegonsa.

[3] Section 895.52(1)(g), STATS., states:

"Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

disagreement centers on whether Ehle qualifies as an "owner" entitled to immunity under the statute either because his shanty constitutes a statutory "structure," or because he is an "occupier," as a result of fishing with Doane in his shanty on the "waters of the state."

When we construe a statute, our aim is to ascertain the intent of the legislature, by looking first to the language of the statute itself. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). We must determine whether the statute is clear and unambiguous on its face or whether its language is capable of being understood by reasonably well informed persons in two or more ways. *Id.* When the language of the statute is clear, we will not look beyond that language to determine legislative intent. *Cynthia E. v. LaCrosse County Human Servs. Dep't*, 172 Wis. 2d 218, 225, 493 N.W.2d 56, 59 (1992). However, when a statute is ambiguous, we will look to its context, scope, subject matter, history and object to discern legislative intent. *Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. We must interpret the statute to avoid an absurd or unreasonable result. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). Furthermore, we presume that "the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute." *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 635, 547 N.W.2d 602, 606 (1996).

Following this methodology, we first examine whether the shanty is property within the plain meaning of the statute. The statute delineates three categories of property whose owners may qualify for immunity: (1) real property; (2) buildings, structures and improvements thereon; and (3) waters of the state.

■ The parties agree that an ice fishing shanty is a "structure."[4] However, in § 895.52(1)(f), STATS., the word, "structures" is modified by the adverb "thereon," describing where statutory structures are located. Real property is the only location referenced prior to the use of the adverb, "thereon." Therefore, in order for a structure to be the type listed in § 895.52(1)(f), it must be located, at least in part, on real property. However, at the time of the accident, the shanty was on the frozen water of Lake Kegonsa. And, even though it may be argued that in certain circumstances a body of water may come within the definition of real property, here, the legislature specifically established waters of the state as a separate category of property. If the legislature had intended that the waters of the state were to be included within the real property referenced in § 895.52(1)(f), there would have been no need to separately list them. *See NCR Corp. v. DOR*, 128 Wis. 2d 442, 456, 384 N.W.2d 355, 362 (Ct. App. 1986) (statutes should be construed to avoid rendering a word or clause superfluous). Therefore, we conclude that structures located completely on water,[5] and which are not affixed to the lake bed or to the shore, are not located on real property, and are therefore not themselves "property" within the meaning of the recreational immunity statute.

Next we consider whether Ehle was a recreational property "owner" as defined by statute because he was fishing on Lake Kegonsa. Clearly, Ehle is not an

---

[4] While we do not necessarily agree with this conclusion, we leave the parties in the position they have chosen.

[5] *Cf. Crowbridge v. Village of Egg Harbor*, 179 Wis. 2d 565, 508 N.W.2d 15 (Ct. App. 1993) (pier resting on lake shore and lake bed is a structure within the meaning of § 895.52, STATS.).

"owner" in regard to the lake, itself, as the State of Wisconsin is the owner of Lake Kegonsa by virtue of its role as a trustee of navigable bodies of water. *Sauer v. Reliance Ins. Co.*, 152 Wis. 2d 234, 238–39, 448 N.W.2d 256, 258 (Ct. App. 1989). However, Ehle argues he is an owner because he is an occupier within the meaning of § 895.52(1)(d), STATS.

"Occupy" is defined as "to take and hold possession." WEBSTER'S NEW COLLEGIATE DICTIONARY 794 (8th ed. 1974). That definition could imply possession for some unstated period of time or it could be understood in a way in which time is not relevant. Therefore, reasonable persons could differ in their assessments of whether Ehle "occupied" a portion of the lake with his shanty within the meaning of the statute. However, occupy, as used in § 895.52, STATS., has been defined by this court as requiring a degree of permanence, as opposed to mere use. *See Hall*, 146 Wis. 2d at 491, 431 N.W.2d at 698 (citing *Smith*, 823 F.2d at 1197). There was no evidence offered that would show that Ehle leased or possessed, in a proprietary sense, a part of the lake.

■

Here, the shanty could be more fairly analogized to a fishing boat which is anchored for a time on a lake. Both the use of a boat and the use of a shanty facilitate the recreational use of the lake. While the presence of a boat or shanty might preclude other would-be fishermen from using one particular spot on the lake, such use does not import that rights or duties have been transferred from the owner (the State). Therefore, we conclude that Ehle was merely a user of the lake, as was Doane. The fact that Ehle owned the ice shanty they were fishing in does not make him an "occupier" of the lake in a statutory sense. Indeed, to so define Ehle

would not further the policy which underlies the statute, *i.e.*, of opening as much property as possible for recreational use, because the lake was already held in trust for public recreational purposes, such as fishing. *Muench v. Public Serv. Comm'n*, 261 Wis. 492, 515, 53 N.W.2d 514, 524 (1952). An ice shanty is merely the means by which an ice fisherman makes use of the lake. Therefore, we conclude that a shanty owner is not the type of property owner whom the legislature intended to immunize from liability for negligent acts.

## CONCLUSION

A portable ice shanty located on a frozen lake does not qualify as recreational "property" and is insufficient to establish its owner as an "occupant" of the lake entitled to recreational immunity. The summary judgment dismissing the Doanes' claims against Ehle is reversed and the matter is remanded for further proceedings in the circuit court.

*By the Court.*—Judgment reversed and cause remanded.