DAVID T. PROSSER, J.
¶ 83. (concurring in part; dissenting in part). This case involves an unfortunate accident that occurred at a charity event in Beaver Dam on July 30, 2011. I agree with the majority opinion that "Sundog's waiver of liability form violates public policy and is unenforceable as a matter of law." Majority op., ¶ 4. However, I also agree with the dissenting opinion of Justice Rebecca G. Bradley that "Sundog meets the statutory requirements to obtain recreational immunity because: (1) it falls within the definition of 'owner,' which includes 'a person. . . that. . . occupies property;' and (2) Patti Roberts engaged in a recreational activity on the property occupied by Sundog." Dissent, ¶ 132. Consequently, I join the dissenting opinion of Justice Rebecca Bradley except for footnote 4.
*420 ¶ 84. My purpose in writing is to reinforce the inexorable logic of Justice Bradley's dissent and respond to the concurrence of Justice Ziegler.
¶ 85. Wisconsin Stat. § 895.52 reads in part as follows:
(2) NO DUTY; IMMUNITY FROM LIABILITY, (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
3. A duty to give warning of an unsafe condition, use or activity on the property.
(b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for . .. any injury to ... a person engaging in a recreational activity on the owner's property ....
¶ 86. Critical to the interpretation of this statute is the definition of "owner."
"Owner" means either of the following:
1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies property.
2. A governmental body or nonprofit organization that has a recreational agreement with another owner.
Wis. Stat. § 895.52(l)(d).
¶ 87. In this case, we should analyze three different entities: (1) Beaver Dam Conservationists, LLC; (2) Green Valley Enterprises; and (3) Sundog Ballooning, LLC (and its owners, Kerry M. Hanson and Jodi L. Hanson) (Sundog).
*421 ¶ 88. "Beaver Dam Conservationists, LLC . . . owned the shooting range where the charity event was held." Majority op., ¶ 5. The shooting club was thus an owner.
¶ 89. The shooting club donated use of its property to Green Valley Enterprises, a charitable organization, which opened the property free to the public as part of a charitable fundraiser. Of course, Green Valley could not have opened up the property to the public if Beaver Dam Conservationists had not "opened up" the property for Green Valley's charitable event.
¶ 90. Green Valley was an "owner" under Wis. Stat. § 895.52(l)(d)l. because it occupied the property with the permission of an owner. In addition, it was an owner under (d)2. if it signed "a recreational agreement" with Beaver Dam Conservationists.[1] Whether Green Valley actually signed a "recreational agreement" is not known.
¶ 91. The principal issue in this court is whether Sundog also is an "owner" by virtue of occupying the property.
¶ 92. This was not the principal issue in the circuit court. In fact, this was not an issue at all in the circuit court. In its motion for summary judgment, Sundog explained at length that it was an "owner" under the statute because it occupied the property.
¶ 93. The plaintiffs did not dispute this contention. The plaintiffs instead took a different position:
The liability of the Defendant in this case has absolutely nothing to do with the condition of the land, *422 any structures upon it, or use of the land itself by the Plaintiffs or the Defendant.
Negligent acts or decisions not directed at the condition of the land are not entitled to immunity.
¶ 94. The Dodge County Circuit Court, Joseph G. Sciascia, Judge, wrote the following: "The [plaintiffs] do not dispute that the plaintiff was on the property for a recreational purpose. The plaintiff raises the issue of whether or not the statute applies in this case because the injury was caused by an act unrelated to the condition or maintenance of the land . . . ."
¶ 95. Whether Sundog occupied the property was not an issue in the court of appeals either. The court's opinion stated:
Roberts does not contest that Sundog was occupying, and therefore was an "owner" of, "property" on which Patti Roberts was engaging in "recreational activity." See Wis. Stat. § 895.52(l)(d), (f), (g). Roberts also does not dispute that "the activity giving rise to [Patti Roberts'] injury was a 'recreational activity' as defined by the statute," that is, ballooning.
Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., ¶ 16 (Wis. Ct. App. Mar. 26, 2015) (alteration in original).
¶ 96. The reason why "occupies" is the principal issue in this court is because this court made it the principal issue by asking the parties to brief it. The court's order granting review stated in part:
IT IS FURTHER ORDERED that the parties' briefs shall address the following additional issue:
Whether the defendants/respondents Sundog Ballooning, LLC, Kerry M. Hanson, and Jodi L. Hanson, were *423 "occupiers" of the property in question for purposes of the recreational immunity statute at the time of the accident in question. See Wis. Stat. § 895.52(l)(d); see also Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 575 N.W.2d 734 (Ct. App. 1998).
¶ 97. This court has broad authority to ask that additional issues be briefed, but the court should be careful not to fault a party for failing to supply complete evidence on an issue that was not contested, or chide a party for not arguing or briefing an issue that was not necessary because of the party's success in circuit court on a more encompassing issue. See Majority op., ¶ 33 n.6.
1 98. As I see it, Sundog took possession of a large, wide-open space at the recreational property of Beaver Dam Conservationists at the express invitation of Green Valley Enterprises. Its balloon was tethered to two trees and a pickup truck that was brought into and parked on the property. The two trees and truck formed a triangle with the large balloon in the middle. The Hansons flagged off the whole area. They set up a display and a sign-up table for the balloon ride, and they designated a waiting area for people to line up for a ride. In short, the Hansons completely controlled one-section of the property for their ballooning operation. They "filled up" the space. They not only "used" the space but also governed the space during the time they were authorized to be there. In sum, they occupied the property.
¶ 99. In Doane, the court of appeals said, "An occupant is one who has actual possession of the property, but is more transient than either a lessee or an owner with legal title." Doane, 216 Wis. 2d at 351 (citing Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 491, 431 N.W.2d 696 (Ct. App. 1988)). This, in essence, *424 is the rule applied in multiple cases. There can really be no dispute that Sundog satisfied the test of "occupies" under this rule.
¶ 100. The Doane court added, however, that " 'occupancy,' in the statutory sense, signifies a degree of permanence, as opposed to the mere use of the property in question." Id. (citing Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193, 1197 (7th Cir. 1987)). The Doane court later stated:
"Occupy" is defined as "to take and hold possession." Webster's New Collegiate Dictionary 794 (8th ed. 1974). That definition could imply possession for some unstated period of time or it could be understood in a way in which time is not relevant. Therefore, reasonable persons could differ in their assessments of whether Ehle "occupied" a portion of the lake with his shanty within the meaning of the statute. However, occupy, as used in § 895.52 Stats., has been defined by this court as requiring a degree of permanence, as opposed to mere use. See Hall, 146 Wis. 2d at 491, 431 N.W.2d at 698 (citing Smith, 823 F.2d at 1197).
Id. at 354 (emphasis added).
¶ 101. The court of appeals reached the correct decision in Doane, but it did so, at least in part, for the wrong reason. The Hall case never discussed "a degree of permanence" because Hall never quoted that portion of the Seventh Circuit's opinion. Hall clearly sidestepped the "permanence" part of the Seventh Circuit's opinion and instead quoted language that the Seventh Circuit had quoted from the underlying District Court decision. The language quoted from the District Court's decision made absolutely no reference to "permanence." Until Doane, no Wisconsin case had ever used the phrase "degree of permanence."
*425 ¶ 102. The Hall case involved a Lions Club in Turtle Lake that sponsored a fair on the grounds of the Turtle Lake Village Park. The Village granted the Lions permission to use the park. The Hall court said: " [W]hen a third party such as the Lions Club produces a fair on the land of another, it 'occupies' the land within the intended definition." Hall, 146 Wis. 2d at 490. Then the court quoted language that the Seventh Circuit had quoted from the underlying District Court decision in Smith:
[OJccupant include [s] persons who, while not owners or tenants, have the actual use of land.While "occupant" includes [an] owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner.
Id. at 491 (alterations in original)(quoting Smith, 823 F.2d at 1197, which had quoted Smith v. Sno Eagles Snowmobile Club, Inc., 625 F. Supp. 1579, 1582 (E.D. Wis. 1986)).
¶ 103. If the Doane case is controlling, it substantially changed the law in Wisconsin, disregarding prior court of appeals precedent, when it quoted from the Seventh Circuit's independent analysis in Smith, rather than language quoted from the District Court's underlying decision.
¶ 104. In the Seventh Circuit case, the losing party, Smith, relied on Labree v. Millville Manufacturing, Inc., 481 A.2d 286 (N.J. Super. Ct. App. Div. 1984), a New Jersey case in which a contractor was sued after excavating land as part of the construction of a highway. Smith, 823 F.2d at 1196-97. "The excavation and transfer of sand and gravel resulted in the man-made *426 creation of a twenty acre lake in which people swam on an informal basis." Id. at 1197. David Labree later dove into the lake and hit his head, rendering him a quadriplegic. Id. The contractor, who was sued after he had left the land, claimed recreational immunity under a New Jersey statute. The New Jersey court said:
We believe use of the word "occupant" in the statute signifies an intent to provide immunity for an entity with a degree of permanence in the occupancy, not merely one who is using the property, as was the case with Gaskill. [Gaskill] "occupied" the property not really as one in occupancy but rather as one removing dirt and gravel from it.
Id. (alterations omittedXquoting Labree, 481 A.2d at 291).
¶ 105. The Seventh Circuit opinion in Smith borrowed the "degree of permanence" language from the New Jersey court and used it against the losing party. But it is very doubtful that the Seventh Circuit intended to create a "degree of permanence" test for "occupants." Indeed, the Seventh Circuit favorably referred to the language from the underlying District Court opinion, quoted in Hall, when explaining that if the court "were to circumscribe and interpret 'occupant' as one in actual possession or exclusive control the term would be indistinguishable from owner." Smith, 823 F.2d at 1198. Our court of appeals should not have embraced the phrase "degree of permanence" as established Wisconsin law to bootstrap its decision in Doane.
¶ 106. This court cannot adopt the "permanence" test from the Seventh Circuit decision without overruling Hall and numerous other cases, and also effectively ruling that Green Valley Enterprises did not "occupy" the property. If a "permanence" test disqualifies Sun- *427 dog, it would disqualify Green Valley Enterprises as well because Green Valley did not own or lease the property — it occupied the property. Green Valley's few extra hours of occupancy at the shooting range cannot realistically be viewed as being more "permanent" than Sundog's occupancy.
¶ 107. The majority's decision to disqualify Sun-dog from any status as an "owner" and send this case back for trial does not end the immunity issue. If Green Valley is still considered an occupant, we must anticipate that Sundog will assert that it was Green Valley's "agent" under Wis. Stat. § 895.52(2)(a) and (b). There is no definition of "agent" in the recreational immunity statute, meaning that the circuit court may resort to a dictionary. "Agent" is defined as (1) one that acts or has the power or authority to act, or (2) one empowered to act for or represent another. American Heritage Dictionary of the English Language 33 (3d ed. 1992).
¶ 108. Kerry Hanson explained in his deposition that he and his wife lived in Rhinelander but had family ties to Beaver Dam. In fact, his sister, Kristin Hanson, was manager for agency development for Green Valley Enterprises. Kerry Hanson testified as follows:
Q. How was it that it came about that you were going to be involved in this event in the first place?
A. —the head of the Green Valley Enterprises, a business that services special needs people, was actually in the neighborhood, saw my balloon tethered. He employs my sister, who is a marketing director for Green Valley Enterprises. He saw it and said, wow, *428 what a cool thing; maybe we could use that at our fundraiser to increase awareness, and I believe that began the process.
Q. And eventually it was agreed that you would do that.
Correct?
A. Right.
Q. And it's my understanding that you were donating your services that day?
A. Right.
¶ 109. In other depositions, witnesses testified that Sundog's balloon rides were advertised as an attraction for Green Valley Enterprises' fundraising event.
¶ 110. Under the circumstances, it would be rather difficult to conclude that Sundog was not an "agent" of Green Valley Enterprises if Green Valley was an "owner."
¶ 111. The "agent" of an "owner" is immune under the statute. However, the majority's conceptual dilemma is that any "agent" in this situation is likely to be " a third party not responsible for opening up the land to the public," Majority op., ¶ 33, which the majority now deems essential to qualifying for immunity: "Here . . . defining Sundog as an 'occupier' would not further the policy underlying the statute because the Conservationists' property was already open for public recreational purposes." Id., ¶ 35.
¶ 112. The majority opinion adds, "Immunizing Sundog would have no effect on whether the public had access to private land, because Sundog is not responsible for opening the land to the public." Id., ¶ 37.
*429 ¶ 113. This analysis would appear to deny immunity to any "officer, employee or agent" who did not "open up the land" to the public.
¶ 114. This analysis also is deficient because it ignores the fact that people often come to a property because they have been attracted by the promise of recreational activities there. Example: the Roberts family came to the shooting range, in part, because they heard there would be balloon rides. If organizations and people providing bona fide recreational activities are stripped of recreational immunity because they did not "open up the land to the public," they will have to rethink whether they are willing to participate in such activities.
¶ 115. In sum, the majority opinion seriously misinterprets the meaning of "owner" in the statute.
¶ 116. As noted above, the Robertses contended at trial that recreational immunity must be linked to a "condition of the land, any structures upon it, or use of the land itself." See supra, ¶ 93. Justice Ziegler's concurrence champions this proposition by relying on Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), and Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997).
¶ 117. Linville is the tragic case in which a man took a mother and her four-year-old son to a city-owned pond in Janesville. The man intended to take the boy fishing, and he was checking out fishing spots for the next day. Through a series of bizarre events, the man drove his van too close to the water, got stuck in mud, then inadvertently drove the van into the water where he and the boy drowned. Plaintiffs sued the city claiming that the city's paramedics were negligent in their rescue of the boy and negligent in providing *430 medical services to the boy. The city defended with a claim of recreational immunity under Wis. Stat. § 895.52.
¶ 118. This court first struggled with the question of whether the three people at the pond were engaging in a "recreational activity" at the time two of them died. The court said they were. But that did not settle the question of whether the city could claim recreational immunity for the alleged negligence of its paramedics in the rescue effort.
¶ 119. The court determined that the city could not assert recreational immunity for the alleged negligence of its paramedics because it was virtually coincidental that the alleged negligence of the paramedics occurred at a city-owned recreational site and came after a mishap in recreational activity for which the city bore no responsibility.
¶ 120. The court said: "The City's immunity for its functions as owner of recreational land cannot shelter its liability for negligently performing another function." Linville, 184 Wis. 2d at 711.
¶ 121. In discussing this conclusion, the court observed: "We must determine whether this statute immunizes the paramedics and the City simply because the paramedics are employees of the City which owns the Pond." Id. at 718.
[G]ranting immunity to the landowner when the landowner and the employer of the negligent employee are functioning in two different capacities and are therefore not the same entity in the eyes of the law would produce absurd consequences. ... To interpret the language of sec. 895.52(2)(b), Stats., to include injury resulting from negligent rescue and treatment by the paramedics in this case, would produce absurd consequences.
*431 Id. at 719. The court continued: "The paramedics provide emergency medical treatment in every part of the City, no matter the situs. Thus the City's rescue attempts and medical treatment are separate and apart from the City's ownership of or activities as owner of recreational land." Id. at 721.
¶ 122. The Linville court bolstered its analysis by repeated reference to the purported purpose of the recreational immunity statute, e.g., property owners should be encouraged to open up land to the public. In my view, this discussion of policy was not necessary to a limitation of immunity and is not relevant when dealing with public land that is intended for use by the public.[2]
*432 ¶ 123. Justice Ziegler's concurrence builds on Linville and would state the law as follows:
(1) While the policy of the recreational immunity statute encourages landowners to open their land to the public, the recreational immunity statute does not cloak negligent actors with immunity no matter what they do. Justice Ziegler's concurrence, ¶ 67.
(2) A "person" who owns, leases, occupies, or has a "recreational agreement" to use recreational property is not sheltered from liability for "negligently performing" another function such as operating or otherwise participating *433 in a "recreational activity," as defined in Wis. Stat. § 895.52(l)(g). See id., ¶ 69. An "owner" under the statute "might sometimes function in a capacity unrelated to its ownership of the land, and that. . . owner should not be immunized against claims that the owner engaged in negligent conduct when operating in that capacity." Id.
¶ 124. Justice Ziegler writes that the "municipal owner of a pond in which a four-year-old boy drowned despite the efforts of paramedics employed by the owner was immune under § 895.52 from claims that its pond was negligently maintained, but not immune from claims that it negligently performed in its capacity as provider of paramedic services." Id. (emphasis added).
¶ 125. Justice Ziegler's summary of the law is squarely at odds with the court's discussion in Ervin v. City of Kenosha, 159 Wis. 2d 464, 464 N.W.2d 654 (1991). In that case, two youths drowned at a public beach owned and operated by the City of Kenosha. The youths' parents sued the City for negligently hiring and failing to properly train and instruct lifeguards, and for the lifeguards' alleged negligent performance at the time of the drownings. This court was confronted with arguments about separating the City's ownership of the land from its operation and oversight of the beach by its lifeguards. The court concluded that "the City is immune from liability ... for its negligence in hiring or failing to properly train the lifeguards, [and] for the lifeguards' negligent performance." Ervin, 159 Wis. 2d at 469.
¶ 126. The Ervin court's opinion reads in part:
The parents argue that sec. 895.52(2), Stats., does not immunize the City from liability for the lifeguards' *434 negligence or for its own negligent hiring and failure to train them. The parents contend that the City's conduct represented "active" negligence, and that the statute was intended to immunize only "passive" or "condition of the premises" negligence. We disagree because: (a) the plain language of the statute does not support this contention, (b) Wisconsin case law permits immunity under the recreational use statute for both active and passive negligence, and (c) legislative intent clearly supports granting immunity for both active and passive negligence.
Id. at 472.
¶ 127. The Ervin court also quoted approvingly from this court's decision in Wirth v. Ehly, 93 Wis. 2d 433, 287 N.W.2d 140 (1980):
The statute does not contemplate that the land subject to public recreational use shall remain static. Since the purpose of the statute was to open land for recreational use, it would be inconsistent for the statute to provide protection only if the owner or occupant does not perform any potentially negligent activities on the land.
Ervin, 159 Wis. 2d at 475 (alteration omitted) (quoting Wirth, 93 Wis. 2d at 446).
¶ 128. It should be noted that the only justice who dissented in Ervin was Justice William Bablitch, the author of the Linvilie opinion. In his dissent, Justice Bablitch wrote:
By placing unqualified lifeguards on a public beach, the City of Kenosha .. . created a trap for the unwary. The presence of the lifeguards created the perception of a safe condition that was not justified. I do not agree with the majority that the recreational use statute exempts owners of recreational property from liability when the actions of the owner create a *435 perception of safety that does not in reality exist. The legislature could not have intended such an absurd result.
Id. at 485 (Bablitch, J., dissenting). In Justice Bablitch's Linville opinion, the court did not overrule Ervin.
¶ 129. In her concurrence, Justice Ziegler formulates a rational policy of limited recreational immunity, but that policy would require this court to overrule a number of cases including Ervin and Wirth, disregard controlling language in the statute, and clean up internal inconsistencies in her own concurring opinion. If we were to assume the correctness of a strict separation of functions analysis, that separation would apply irrespective of whether the separation affects an owner, a lessee, an occupier, a recreational agreement holder, or an officer, employee, or agent of an owner. Neither the concurrence nor the majority opinion has confronted the consequences of such a change in the law.
¶ 130. I would not hesitate for a moment supporting the unfortunate victim of this balloon accident if the statute provided a reasonable means to do so. I do not hesitate now to recommend that the legislature promptly review the recreational immunity statute. I respectfully dissent, however, from any notion that the court itself should rewrite the statute to reach a desirable objective.
¶ 131. I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this opinion.

 "Recreational agreement" is defined in Wis. Stat. § 895.52(l)(h) to mean "a written authorization granted by an owner to a governmental body or nonprofit organization permitting public access to all or a specific part of the owner's property for any recreational activity."

 Kosky v. International Ass' n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997), also is cited in Justice Ziegler's concurrence. This case requires close examination.
Kosky involved a man whose hands were badly injured as he was participating in a three-person team detonating "explosive fireworks" at the annual Fourth of July fireworks celebration in Land O'Lakes, Wisconsin. Kosky sued the Land O'Lakes Lions Club and other sponsors of the show, as well as several co-workers. The defendants claimed recreational immunity under Wis. Stat. § 895.52.
In his brief to the court of appeals, the plaintiff asserted that the "extra-hazardous activity of detonating explosive fireworks" was not a "recreational activity" protected under Wis. Stat. § 895.52. (capitalization and title case omitted.) He also asserted that although he had ties to the area, he came from Niles, Illinois, at the specific request of the Land O'Lakes Lions Club "to perform work tasks with a team of people detonating explosive fireworks." He declared that he personally was not engaging in recreational activity because he was working, not watching the fireworks.
The court of appeals rejected Kosky's argument that the detonation of fireworks could not be a recreational activity because it is an inherently dangerous, extra-hazardous activity. Kosky, 210 Wis. 2d at 474. On the other hand, the court was *432 not willing to say that the detonation of fireworks was a recreational activity in the circumstances presented. Instead, the court concluded that "recreational immunity does not attach to the landowner when an act of the landowner's officer, employee or agent that is unrelated to the condition or maintenance of the land causes injury to a recreational land user." Id. at 475.
The Kosky court quoted from Linville: "Extending immunity to landowners for negligently performing in a capacity unrelated to the land or to their employees whose employment activities have nothing to do with the land will not contribute to a landowner's decision to open the land for public use." Id. at 476 (quoting Linville, 184 Wis. 2d at 719).
To support this conclusion, Linville cited Ervin v. City of Kenosha, 159 Wis. 2d 464, 472-76, 464 N.W.2d 654 (1991), for the following proposition: "The legislature, in sec. 895.52, Stats., granted immunity to landowners with respect to the condition of the land and to the landowners' (or its employees') actions with respect to the land." Linville, 184 Wis. 2d at 718.
As will be seen, this statement is not an accurate description of Ervin. Moreover, it does not take into account that lessees and occupiers and persons with a recreational agreement cannot "open the land" until the actual landowner puts them in a position to open the land. It also fails to acknowledge that public land is normally open to the public already.