ANN WALSH BRADLEY, J.

(dissenting).

¶ 62. The Wisconsin Legislature recognized the important role of whistleblowers in maintaining accountable government. The legislative purpose of the statute is expressly declared: "It is the policy of this state to encourage disclosure of information . . . and to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing information .. ." Wis. Stat. § 230.01(2).
¶ 63. Employees are encouraged to disclose information, including a violation of any law or regulation and any mismanagement or substantial waste of public funds. Wis. Stat. § 230.80(5). In aid of this, the legislature has directed that the statutes "shall be construed liberally in aid of the purposes declared ..." Wis. Stat. § 230.02.
¶ 64. I write separately because the majority opinion undermines the legislative purpose of Wisconsin's whistleblower statute. First, the majority creates a heretofore unknown rule that bars the application of the explicit legislative directive of liberal construction. *724 Second, it writes new language into the statute thereby limiting the protections available to whistle-blowers. Third, it turns the legislative policy on its head, creating an absurd result.
¶ 65. Contrary to the majority, I conclude that Joell Schigur lawfully disclosed information pursuant to Wis. Stat. § 230.81. I would reverse the court of appeals and uphold the determination of the Department of Workforce Development, Equal Rights Division. Accordingly, I respectfully dissent.
I
¶ 66. The Department of Justice ("DOJ") selected Joell Schigur to be its Director of the Bureau of Public Integrity. She was demoted after she sent emails to her supervisor, Michael Myszewski, expressing her concern regarding Attorney General Van Hollen's use of a taxpayer paid security detail at the upcoming Republican National Convention.
¶ 67. Schigur wrote that she "was concerned that providing state resources to the Attorney General while he participates in a political activity off duty may violate OSER regulations and state law." Attached to Schigur's email was a bulletin from the Office of State Employee Relations ("OSER") regarding prohibited political activities. Schigur explained that she was sending the email "in hopes that this decision will be further evaluated to avoid possible scrutiny of our Attorney General, our agency and our special agents."
¶ 68. Schigur explained in a second email that "the concern is not regarding agents participating in political activity; rather can state resources be used by the AG at a political event where he is not representing DOJ, rather the Republican Party. Parallel issues *725 came up in the Jensen/Chvala investigation." Ultimately, no security detail was sent to the Republican National Convention.
¶ 69. Prior to sending the above emails to Myszewski, Schigur received quarterly job performance evaluations that were uniformly positive. Shortly before Schigur sent the emails, Myszewski completed her 21-month probationary performance evaluation. He wrote: "Joell continues to do an outstanding job of leading the Public Integrity Bureau and the Internet Crimes Against Children Program. Joell is a nationally recognized leader in the area of protecting children from Internet predators. Joell has successfully mastered all of the objectives and standards for a bureau director. I recommend that Joell be removed from probation and receive permanent status as a director."
¶ 70. Yet, shortly after Schigur sent the emails to Myszewski, she received her 24-month probationary performance evaluation that was negative and markedly different from her prior uniformly positive evaluations. As a result, Schigur was removed from her Bureau Director position and demoted.
¶ 71. In its findings of fact, the Department of Workforce Development, Equal Rights Division, found that "Schigur's disclosure in her April 21 and 23, 2008 emails to Myszewski and O'Donnel was a factor in DOJ's decision that she failed to pass probation as a Bureau Director on May 21, 2008."[1] The Department determined that the DOJ violated Wis. Stat. § 230.80-89 by "taking retaliatory action against [Schigur] because she lawfully disclosed, or the Re *726 spondent believed that she had lawfully disclosed, information under sec. 230.81."
¶ 72. The majority reverses the Department's determination. It concludes that "under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained 'information' regarding the proposed security detail, the communication of the information to Myszewski, Jed Sperry, and Cindy O'Donnell was not a 'disclosure' under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails . . ." Majority op., ¶ 5. In reaching its conclusion, the majority declines to follow the directive that the statute be liberally construed to effect its purpose and instead writes into the statute a "new" requirement.
II
¶ 73. "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature ..." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Kalal instructs that we must give judicial deference to the policy choices enacted by the legislature." See Id., ¶ 44.
¶ 74. The majority turns a blind eye not only to the above instructions but also to recognized rules of statutory interpretation. Instead of embracing precedent, the majority sub silencio overrules it, while creating its own contrary, and heretofore unknown, rule of statutory interpretation.
¶ 75. The express mandate of Kalal, which the majority sub silencio overrules, provides: "a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." Id., ¶ 49. *727 Kalal explained that purpose is "perfectly relevant to a plain-meaning interpretation of an unambiguous statute" as long as it is ascertainable from the text of the statute itself and not extrinsic sources. Id,., ¶ 48.
¶ 76. But the majority will have none of this. It dutifully sets forth the purpose that is ascertainable from the text as declared by the legislature in Wis. Stat. § 230.01(2): "It is the policy of this state to encourage disclosure of information . . . and to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing information . . ." Id., ¶ 30. The majority likewise acknowledges that the legislature expressed in the text of Wis. Stat. § 230.02 that it should be liberally construed: "Statutes applicable to the office shall be construed liberally in aid of the purposes declared in § 230.01." Majority op., ¶ 30 (citing Wis. Stat. § 230.02).
¶ 77. Nevertheless, the majority contends that it cannot apply the legislature's explicit directive to liberally construe the statute. Why?
¶ 78. The majority claims that a provision can be construed liberally only when there is some ambiguity to construe.[2] It also asserts that "[w]e cannot construe the statute liberally in aid of disclosure of information and protection from retaliatory action for disclosure of *728 information until we know what the terms 'disclosure of information' and 'retaliatory action' mean." Id., ¶ 31.
¶ 79. A liberal construction "is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction." In re R.W.S., 162 Wis. 2d 862, 871-72, 471 N.W.2d 16 (1991) (citing Singer, Sutherland Statutory Construction, sec. 58.02 (4th ed. 1984)).
¶ 80. The majority's reasoning that it cannot construe the statute liberally until it first defines the terms in the statute is backwards. "Liberal construction of any statute consists in giving the words a meaning which renders it effectual to accomplish the purpose or fulfill the intent which it plainly discloses." State ex rel Mueller v. Sch. Dist. Bd., 208 Wis. 257, 260, 242 N.W. 574 (1932).
¶ 81. Instead of applying the statutorily required liberal construction, the majority defines the terms "disclose" and "information" narrowly so that Schigur's claims do not fall within the statute. It then reasons that we need not construe the statute liberally because Schigur's claims do not fall within the statute.
¶ 82. The point of liberal construction is to interpret the statute in a way that furthers the legislative goal, which in this case is to protect employees who act as whistleblowers. Yet, the majority has done the opposite here by defining the terms of the statute in a way that denies protection for whistleblowers.
¶ 83. The majority's contention that a statute cannot be construed liberally unless it is ambiguous is *729 a heretofore unknown rule of statutory interpretation.[3] It sub silencio overrules the widely accepted rule of statutory interpretation set forth in Kalal — that a plain-meaning interpretation cannot contravene a textually manifest statutory purpose. 271 Wis. 2d 633, ¶ 49.
¶ 84. Kalal's well-recognized rule has been relied upon for years by judges, attorneys and litigants.[4] In fact, as recently as a few months ago, we again embraced that established rule of statutory interpretation in State v. Williams, 2014 WI 64, ¶ 36, 355 Wis. 2d 581, 852 N.W.2d 467 ("In addition to the statutory history and structure, the contextually manifest purposes of [the statute] are relevant to our plain meaning analysis."). See also State v. Dinkins, 2012 WI 24, ¶ 101, 339 Wis. 2d 78, 810 N.W.2d 787 ("scope, *730 context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute, so long as they are ascertainable from the statute itself. Importantly, a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose.") (Ziegler, J. dissenting) (quotations and citations omitted); Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶ 17, 325 Wis. 2d 135, 785 N.W.2d 302 ("A plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose.") (citation omitted).
¶ 85. Unfortunately, the majority's newly minted rule of statutory interpretation will have far-reaching consequences that go well beyond this whistleblower statute. For example, Wisconsin's Fair Employment law contains a legislative directive that it be liberally construed to advance the purposes of the statute. Wis. Stat. § 111.31(3). Likewise, Wisconsin's Consumer Transactions law contains the same directive. Wis. Stat. § 421.102(1). Will the legal rights of Wisconsin's workers and consumers be similarly limited under the majority's new rule of statutory interpretation?
¶ 86. The numerous Wisconsin laws that contain similar legislative directives range across the broadest spectrum of our statutes. See, e.g., Wis. Stat. § 766.001(1) (Marital Property); Wis. Stat. § 16.001(2) (Department of Administration); Wis. Stat. § 32.71 (Eminent Domain); Wis. Stat. § 707.57(4) (Time-Share Ownership); Wis. Stat. § 231.24 (Health and Educational Facilities Authority); Wis. Stat. § 401.305(1) (Uniform Commercial Code); Wis. Stat. § 66.0301 (2) (Intergovernmental Cooperation); Wis. Stat. § 645.01(3) (Insurers Rehabilitation and Liquidation).
¶ 87. The juggernaut of the majority's analysis rests on its new rule of statutory interpretation: a *731 provision can be construed liberally only when there is some ambiguity to construe. Majority op., ¶ 32. As discussed above, the majority's new rule: (a) bars the application of the statutory directive of liberal construction to effectuate the legislative purpose; (b) sub silencio overrules part of Kalal, a seminal statutory interpretation case; and (c) has broad negative consequences. Simply put, the majority's new rule of statutory interpretation should not stand.
Ill
¶ 88. The majority's insistence that a "disclosure" must contain "new" information writes language into the statute which dramatically limits whistle-blower protections. According to the majority, in order to "disclose" information, "the recipient must have been previously unaware of the information at the time of the communication." Id., ¶ 46 (citing State v. Polashek, 2002 WI 74, ¶ 23, 253 Wis. 2d 527, 646 N.W.2d 330). It maintains that Schigur's emails were "not a 'disclosure' under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails." Id., ¶ 49. Accordingly, the majority concludes that Schigur has no recourse under the law for any retaliation that resulted from her emails regarding the Attorney General's security detail at the Republican National Convention.
¶ 89. The plain language of Wis. Stat. §§ 230.80-89 contains no requirement that the disclosed information be previously unknown. It neither contains the words "new" or "secret" nor any other word or phrase that could be interpreted as a synonym. Wis. Stat. § 230.81(l)(a) states:
An employee with knowledge of information the disclosure of which is not expressly prohibited by state *732 or federal law, rule or regulation may disclose that information to any other person. However, to obtain protection under s. 230.83, before disclosing that information to any person . .. the employee shall. . . disclose the information in writing to the employee's supervisor.
Wis. Stat. § 230.80(5)(a) and (b) define "information" as:
'Information' means information gained by the employee which the employee reasonably believes demonstrates:
(a) A violation of any state or federal law, rule or regulation.
(b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.
¶ 90. "It is presumed that the legislature is cognizant of what language to include or omit when it enacts laws." In re Incorporation of Portion of Town of Sheboygan, 2001 WI App 279, ¶ 9, 248 Wis. 2d 904, 637 N.W.2d 770. Reading an unwritten requirement for new or secret information into the whistleblower statutes dramatically narrows the scope of protected disclosures in contravention of legislative intent. As this court has previously explained, "[o]ur duty to fulfill legislative intent ensures that we uphold the separation of powers by not substituting judicial policy views for the views of the legislature." State ex rel. Hensley v. Endicott, 2001 WI 105, ¶ 7, 245 Wis. 2d 607, 629 N.W.2d 686 (quoting State ex rel. Cramer v. Schwartz, 2000 WI 86, ¶ 17, 236 Wis. 2d 473, 613 N.W.2d 591).
*733 ¶ 91. The majority relies on State v. Polashek for its conclusion that "disclosure" means "new information." Polashek is a slender reed upon which to rest such a conclusion. Although the Polashek court determined that "the term 'disclose' in § 48.981(7) requires that the recipient not have knowledge of the information communicated," its determination is not controlling. 253 Wis. 2d 527, ¶ 3. It is construing a penal statute, Wis. Stat. § 48.98l(7)(f), which provides a criminal penalty for the unauthorized disclosure of confidential information relating to reports of suspected child abuse or neglect. See id., ¶ 1.
¶ 92. Penal statutes are strictly construed. See, e.g., State v. Christensen, 110 Wis. 2d 538, 547, 329 N.W.2d 382 (1983). "This canon of strict construction is grounded on two public policies. The first favors notice as to what conduct is criminal. The second recognizes that 'since the power to declare what conduct is subject to penal sanctions is legislative, rather than judicial, it would risk judicial usurpation of the legislative function for a court to enforce a penalty where the legislature had not clearly and unequivocally prescribed it.' " Id., 110 Wis. 2d 538, 546-457 (citations omitted).
¶ 93. Given that Wis. Stat. § 48.981(7) is a penal statute, the canon of strict construction required the Polachek c^ourt to interpret "disclosure" narrowly so that the definition of criminal conduct under the statute was not expanded by the judiciary. In Polachek, the disclosure of information was an element of the crime. 253 Wis. 2d 527, ¶ 23. By narrowly defining "disclosure of information" to recipients who were unaware of the information, the Polachek court properly limited, rather than expanded, criminal conduct under the statute.
*734 ¶ 94. The purpose and effect of Wis. Stat. §§ 230.80-89 is the opposite of Wis. Stat. § 48.981(7) because the whistleblower act is a remedial statute. In contrast to penal statutes, "[u]nder the accepted law of Wisconsin and of other jurisdictions, remedial statutes should be liberally construed to 'suppress the mischief and advance the remedy which (the statute) intended to afford.' " City of Madison v. Hyland, Hall & Co., 73 Wis. 2d 364, 373, 243 N.W.2d 422 (1976). In this case, the canons of statutory interpretation demand that "disclosure" and "information" be liberally construed so that protections for whistleblowers are advanced and retaliation by employers is suppressed.
¶ 95. Wis. Stat. § 230.80(5)(a) and (b) define "information" as:
'Information' means information gained by the employee which the employee reasonably believes demonstrates:
(a) A violation of any state or federal law, rule or regulation.
(b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.
¶ 96. The majority reaches two conclusions regarding why Schigur's emails are not information under the statute. First, "an opinion alone, as to the lawfulness or appropriateness of government activity is not 'information' as that term is defined in Wis. Stat. § 230.80(5)." Majority op., ¶ 5, 29, 41 & 59. Second, "that under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained 'information' regarding the proposed security detail, *735 the communication. . . was not a 'disclosure'. . . because the information was already known to the recipients of the e-mails." Id., ¶ 29. I address each in turn.
¶ 97. I address first the majority's conclusion "that an opinion alone, as to the lawfulness or appropriateness of government activity is not 'information' as that term is defined in Wis. Stat. § 230.80(5). Id., ¶ 29. Relying on Kinzel v. Bd. of Regents of the Univ. of Wisconsin Sys., an unpublished court of appeals decision, the majority asserts that Wis. Stat. § 230.90 "does not cover employee statements that merely voice opinions or offer criticism." Id., f 40 (citing Kinzel, No. 2012AP1586, unpublished slip op., ¶ 19 (Wis. Ct. App. Mar. 28, 2013).
¶ 98. In Kinzel, the plaintiff claimed to have disclosed information about an abuse of authority, which is protected pursuant to Wis. Stat. §230.80(5X2). Kinzel, No. 2012AP1586, ¶ 20. The court of appeals determined that Kinzel did not disclose information about an abuse of authority, but "merely gives his opinion and criticizes." Id. Kinzel did "not set forth specific facts regarding the events associated with the suspension." Id., ¶ 21. Kinzel did "not present any information supporting his opinion that these people are blameless." Id., ¶ 22.
¶ 99. In furtherance of its discussion, the majority offers a sample of the type of opinion that was addressed in Kinzel and deemed inadequate to constitute "information." The majority offers: "For example, the statement T believe that it is illegal for the government to censor free speech.'" Majority op., ¶ 40. If that were the genre of opinion that was offered by Schigur, I would agree with the majority that without more, it is not information. But here there was more, much more.
*736 ¶ 100. Schigur did not merely voice a generic opinion saying "I believe that it is illegal for the DOJ to violate the law and expend taxpayer money for private political purposes." As the Director of the Bureau for Public Integrity, she included specifics facts underlying the concerns that she advanced:
The Attorney General was going to use a state paid security detail while he attended the Republican National Convention.
She raised a concern about the use of state resources given the facts that he would be "off duty," not representing the DOJ, but rather representing a political party.
She provided a copy of the state regulation that she thought may be violated.
She cited to "parallel issues (that) came up in the Jensen/Chvala investigation."
¶ 101. The facts demonstrate a "reasonable belief' for her concern that there may be a violation of a law or regulation and a "reasonable belief' that that there may be "mismanagement" of or "a substantial waste of public funds." This is the very definition of information under the statute and it is exactly what the statute required.
¶ 102. Even if the rewriting of the statute by the majority inserting the word "new" into it were to be condoned, the facts here would meet that test. Until Schigur sent her supervisor emails expressing her concern, he was unaware that she reasonably believed that the DOJ might be violating the law or committing an abuse of funds. Yet, the majority cannot allow Schigur's concern to be interpreted as new information because it would satisfy even the most restrictive definition of "disclose."
*737 ¶ 103. The majority advances next that even assuming that the emails provided information, it was not a "disclosure .. . because the information was already known to the recipients of the e-mails." Majority op., ¶ 29.
¶ 104. The majority goes so far as to argue that "[t]he employee need not disclose her reasonable belief that the information demonstrates unlawful or inappropriate government activity; instead, the employee need only hold that belief." Id., ¶ 48 (emphasis in the original). This assertion finds no support in the plain language of the statute.
¶ 105. What about an attorney who is called upon to provide a purely legal opinion about whether facts revealed by another employee constitute illegality or misuse of state funds? The attorney would be compelled to disclose her legal opinion, but would not be protected under the whistleblower act because the opinion would not be "information." The firing of an attorney because she does not give the legal opinion that her supervisor wants should violate the statute. However, under the majority's analysis, the attorney could be fired without recourse for providing an ethical, but unpopular, legal opinion.
¶ 106. The majority has taken a statutory notice requirement from Wisconsin's whistleblower law and turned it into a double-edged sword. Under the majority's decision, a government employee who tries to prevent wrongdoing risks losing whistleblower protection even if she complies with the law. If an employee does not provide her supervisor with notice of an alleged wrongdoing, she has no protection under the law. However, according to the majority, if the supervisor already knows about the wrongdoing, the *738 whistleblower still has no protection under the law even though she provided the required notice.
IV
¶ 107. Statutory language should be interpreted "reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶ 46. The majority's statutory interpretation of "disclosure" and "information" leads to an absurd and unreasonable result. In some instances the majority's interpretation would protect the wrongdoer, rather than the whistleblower. For example, what if an employee reported evidence of theft to her supervisor without knowing that he was actually the thief? The corrupt supervisor could fire the employee and she would have no protection as a whistleblower because the information was already known. This result turns the legislative purpose of the act on its head by discouraging, rather than encouraging, reporting.
¶ 108. Pursuant to Wis. Stat. § 230.81(l)(a), an employee with knowledge of information shall disclose the information in writing to her supervisor before disclosing it to any other person. The majority has taken a simple notice requirement and turned it into a trap for the unwary. "Employees should not be discouraged from the normal route of pursuing internal remedies before going public with their good faith allegations. Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor, 992 F.2d 474, 478 (3rd Cir. 1993).
¶ 109. "Indeed, it is most appropriate, both in terms of efficiency and economics . . . that employees notify management of their observations ..." Id. "Employers benefit from a system in which the employee reports suspected violations to the employer first; the *739 employee should not, in any event, be penalized for bestowing that benefit on the employer." Sullivan v. Massachusetts Mut. Life Ins. Co., 802 F.Supp. 716, 725 (D. Conn. 1992). Under the majority's decision, an employee is penalized for reporting a violation if the supervisor already knew about the violation.
¶ 110. The consequences of this decision may be far-reaching. Not only will whistleblowers suffer retaliation without recourse, but all of Wisconsin's citizens lose protection against government corruption. Absent legal protections, it will be the rare employee who will risk her livelihood to act as a whistleblower. "Without employees who are willing to risk adverse employment consequences as a result of whistleblowing activities, the public would remain unaware of large-scale and potentially dangerous abuses." Dolan v. Cont'l Airlines, 563 N.W.2d 23, 26 (Mich. 1997).
V
¶ 111. In its findings of fact, the Department concluded that "Schigur's disclosure in her April 21 and 23, 2008 emails to Myszewski and O'Donnel was a factor in DOJ's decision that she failed to pass probation as a Bureau Director on May 21, 2008." We will uphold an agency's findings of fact if they are supported by credible and substantial evidence. See, e.g., Brown v. State Dep't of Children and Families, 2012 WI App 61, ¶ 11, 341 Wis. 2d 449, 819 N.W.2d 827. No one has argued here that this finding of fact is not supported by credible and substantial evidence. We must therefore resolve this case with the understanding that this fact is exactly as the Department found.
¶ 112. In sum, for the reasons stated above, I conclude that Schigur lawfully disclosed information pursuant to Wis. Stat. § 230.81. Therefore, I would *740 reverse the court of appeals and uphold the decision of the Department of Workforce Development, Equal Rights Division, which concluded that the DOJ violated Wis. Stat. §§ 230.80-89 when it terminated Joell Schigur's probation. Accordingly, I respectfully dissent.
¶ 113. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this opinion.

 Cindy O'Donnell, Administrator of the DOJ's Division of Management Services, as well as Jed Sperry, the head of the DOJ's Division of Criminal Investigation's tactical unit, also received copies of the emails.

 The majority applies this new rule of statutory interpretation to Wis. Stat. § 230.80(8)(c), which prohibits retaliation when a "supervisor believes the employee engaged in any activity described in par. (a) or (b)." The activities referenced in Wis. Stat. § 230.80(8)(a) include whether "[t]he employee lawfully disclosed information under s. 230.81..." Accordingly, the majority's statutory interpretation of Wis. Stat. § 230.80(8)(c) cannot be separated from its interpretation of Wis. Stat. § 230.81.

 The majority cites to Justice Roberts's dissent in Salazar v. Ramah Navajo Chapter, where he stated without citation that "a provision can be construed 'liberally' as opposed to 'strictly' only when there is some ambiguity to construe." 132 S. Ct. 2181, 2199 (2012). Salazar is not controlling because it concerns the interpretation of a government contract provision. 132 S. Ct. at 2199. While both the Indian Self-Determination and Education Assistance Act ("ISDA") and government contracts under the act are to be liberally construed, Justice Robert's dissent concerns the interpretation of a government contract, not the statutory language of the ISDA. Id. As in Wisconsin, it is well established in U.S. Supreme Court jurisprudence that a remedial statute is entitled to liberal construction in order to effectuate legislative intent. See, e.g., Clifford F. MacEvoy Co. v. U.S. ex rel. Clavin Tompinks Co., 322 U.S. 102 (1944) ("The [act] is highly remedial in nature. It is entitled to a liberal construction and application in order to properly effectuate the Congressional intent — ").

 See, e.g., Linveille v. City of Janesville, 184 Wis. 2d 705, 715—18, 516 N.W.2d 427 (1994) (In Wisconsin, a statute may be liberally construed even if it is not ambiguous).