ANNETTE KINGSLAND ZIEGLER, J.
¶ 66. (concurring). I join the opinion of the court because I agree that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 (2013-14) and that Sundog's waiver of liability form is unenforceable. The court appropriately does not reach the questions of whether Roberts' injuries arose from a condition or maintenance of the land and, if not, whether Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), and Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997), preclude the attachment of immunity to Sundog under § 895.52, see majority op., ¶ 4 n.4, because resolution of that issue is not necessary to the disposition of this case.
¶ 67. I feel compelled to comment briefly on the condition-or-maintenance issue so that the position set forth by the court of appeals below is not read as the only possible view of the matter. Simply stated, while the policy behind the statute is to encourage landowners to open their land to the public, the recreational *412 immunity statute does not cloak a negligent actor with immunity no matter what they do.
¶ 68. Unlike the court of appeals below, I conclude that there is a patent "division of functions" at play in this case. Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., ¶ 20 (Wis. Ct. App. Mar. 26, 2015). Put differently, Sundog's "immunity for its functions as [occupier] of recreational land cannot shelter its liability for negligently performing another function," namely the operation of its hot air balloon business. Linville v. City of Janesville, 184 Wis. 2d 705, 711 516 N.W.2d 427 (1994). This conclusion is consistent with Linville, Kosky, and the recreational immunity statute.
¶ 69. Wisconsin Stat. § 895.52(2)(b) states in part, "[N]o owner ... is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property. . . ." Despite the broad nature of this language, we concluded in Linville that an " owner" under the statute might sometimes function in a capacity unrelated to its ownership of land, and that the owner should not be immunized against claims that the owner engaged in negligent conduct when operating in that capacity. Linville, 184 Wis. 2d at 720-21. Hence, a municipal owner of a pond in which a four-year-old boy drowned despite the efforts of paramedics employed by the owner was immune under § 895.52 from claims that its pond was negligently maintained, but not immune from claims that it negligently performed in its capacity as provider of paramedic services. Id.
¶ 70. This conclusion followed from our recognition that " [t]he policy behind the statute is to encourage property owners to open their lands for recre *413 ational activities by removing a property user's potential cause of action against a property owner's alleged negligence." Id. at 715. We reasoned that Wis. Stat. § 895.52 "was not enacted to provide indiscriminate immunity for landowners without regard to possible consequences" and that" [extending immunity to landowners for negligently performing in a capacity unrelated to the land . . . will not contribute to a landowner's decision to open the land for public use." Id. at 719 (citation omitted).
¶ 71. The court of appeals applied Linville just a few years later when an individual who suffered injuries assisting in the detonation of fireworks for a display sued the owner of land on which the fireworks display occurred, alleging that the owner had negligently managed the display. Kosky v. Int'l Ass'n of Lions Clubs, 210 Wis. 2d 463, 468-70, 476-77, 565 N.W.2d 260 (Ct. App. 1997). The court of appeals concluded, relying on Linville, that the landowner— which was an "occupie[r]" under the recreational immunity statute — was not immune because the allegedly negligent activities of the owner and its employees related to the detonation of fireworks, not "the condition or maintenance of the land" which it owned. Id. at 468, 470 n.3, 476-77. "[R]ecreational immunity," the court determined, "does not attach to the landowner when an act of the landowner's officer, employee or agent that is unrelated to the condition or maintenance of the land causes injury to a recreational land user." Id. at 475.
¶ 72. In the instant case, Roberts cites Linville and Kosky and argues that Sundog's alleged negligence — the use of an "improper tethering system" and the decision "to proceed with a tethered balloon event in the face of a known storm/gust *414 front" — did not relate to a condition of the land. Therefore, Roberts argues, immunity does not attach. In dismissing this argument, the court of appeals declared: "Roberts identifies no . . . division of functions here. Rather, as stated above, Roberts sued Sundog as owner of property on which Patti Roberts was engaging in a recreational activity." Roberts, unpublished slip op., ¶ 20.
¶ 73. This conclusion is perplexing, because there is a clear potential division of functions in this case: Sundog the property owner (occupier) and Sundog the hot air balloon company owner.[1] The approach taken by the court of appeals below leads to the "indiscriminate immunity" against which we warned in Linville, upsetting the balance struck by the Legislature in both ensuring the protection of the public and incentivizing landowners to allow access to their land. Linville, 184 Wis. 2d at 719; see Ervin v. City of Kenosha, 159 Wis. 2d 464, 478, 464 N.W.2d 654 (1991).
¶ 74. Wisconsin Stat. § 895.52 protects property owners who open their land to the public, but it does not necessarily provide a shield to business owners who are negligent in the operation of their business. See § 895.52(l)(d)l. (defining " [o]wner" to mean, inter alia, " [a] person . . . that owns, leases or occupies property" (emphasis added)). Indeed, it is the partial purpose of § 895.52's sister statute, § 895.525 ("Participation in recreational activities; restrictions on civil liability, assumption of risk"), "to help assure the continued availability in this state of enterprises that offer recreational activities to the public." Wis. Stat. *415 § 895.525(1) (emphasis added). These enterprises are nowhere mentioned in § 895.52, which does not pertain to them.
¶ 75. The Linville and Kosky courts recognized that Wis. Stat. § 895.52 grants recreational immunity, not sovereign immunity, and that the protections offered by § 895.52 end when a landowner performs negligently in a capacity unrelated to the individual's ownership of the land. These considerations govern here.
¶ 76. A hypothetical helps illustrate. One of the many pleasant diversions included in Wis. Stat. § 895.52(l)(g)'s definition of "[rjecreational activity" is "rock-climbing." § 895.52(l)(g). If a landowner in northern Wisconsin owns a piece of property with a cliff on it and wishes, out of the goodness of her heart, to allow the local weekend rock-climbers' club to use the cliff for practice, the legislature has determined via § 895.52 that she should not be penalized if, for example, an unfortunate climber plummets to his death from the cliff. This seems reasonable enough, as a grant of such immunity encourages the landowner to open the land to climbers without fear of negative repercussions. See Linville, 184 Wis. 2d at 715. On the other hand, imagine that the landowner decides to capitalize on her property's attraction and opens an outdoor rock-climbing business, providing training, ropes, and safety equipment to climbers. Under the interpretation of the statute espoused by the court of appeals, if the landowner should decide to continue allowing the unsuspecting local club to climb for free, or opens up her land for a charity event, she can operate her business negligently with respect to the club or to the eventgoers — snapping ropes, cracked helmets, improper training — without fear.
*416 ¶ 77. This hypothetical is not much different than the current case: in both instances there is a potential landowner/occupier who provides access to land but who also allegedly negligently provides recreational activity services on that land.
¶ 78. The scope of immunity provided by this reading of Wis. Stat. § 895.52 is potentially enormous, but there is a more reasonable interpretation: the one applied in Linville and Kosky. Assuming that Sundog could be characterized as an "owner" under § 895.52(l)(d) — and the opinion of the court correctly concludes that it can not, see majority op. ¶ 4 — then it is immune insofar as it is sued in its capacity as "owner" of the patch of land on which it was offering free balloon rides. It is not immune, however, insofar as it is sued in its capacity as owner of a hot air balloon company. This is the division of functions that the court of appeals found lacking. Just as holding the cliff-owner in the hypothetical liable for snapping ropes, cracked helmets, and improper training will not discourage the owner from allowing climbers to use the cliff without the involvement of her business, failing to grant Sundog immunity as a business operator will not discourage it from " opening" its land for recreational activities (that is, activities not conducted by Sundog).
¶ 79. In fairness, application of the statute to facts such as these produces some cognitive dissonance, because, had Sundog been found to be an "occupie[r]," it would not really be a property owner in the sense that most people are used to thinking about that phrase. Sundog would only be a property owner under the recreational immunity statute because it "occupie[d]" the Conservationists' land, and it was only occupying the Conservationists' land because it *417 wanted to offer free balloon rides. But it must be remembered that we are essentially thinking of two Sundogs for purposes of the Linville/Kosky analysis: business owner Sundog, which provides hot air balloon rides, and occupier Sundog, which stands on the sidelines and watches the eventgoers happily use "its" property free of charge.
¶ 80. Importantly, and contrary to what Roberts seems to argue, this interpretation should not be misconstrued to mean that immunity under Wis. Stat. § 895.52 extends only to injuries associated with the physical land itself, e.g., injuries from holes in the ground. Wisconsin Stat. § 895.52(2)(b) provides immunity to owners for any "death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property." § 895.52(2)(b) (emphases added). But the fact remains that immunity is extended to the "owner," i.e. the property owner — not to, for instance, a business operator also on that property. Thus, if someone is accidentally shot while hunting on a landowner's property, the landowner is seemingly immune from suit against her as landowner (even though the bullet is not "associated" with a condition of the land). But if the landowner also operates a hunting supply shop on the land, opens the land for a charity event, and proceeds to provide negligently-maintained firearms to participants, it might be that recreational immunity would not attach to the entity in its capacity as a business owner.
¶ 81. Ultimately, because Sundog is not an "owner" under Wis. Stat. § 895.52(l)(d), the question of whether it operated in two distinct capacities at the charity event is not relevant to the outcome of this case. However, the court of appeals should not be the *418 only word on this important question, which is wisely left unanswered by the opinion of the court.[2]
*419 ¶ 82. For the foregoing reasons, I respectfully concur.

 The division of functions is only "potential" because, as explained, Sundog is not actually an owner under Wis. Stat. § 895.52(l)(d). See majority op. f 4.

 Justice Prosser's partial concurrence criticizes my post-Linville analysis through use of a pre-Linville case, Ervin v. City of Kenosha, 159 Wis. 2d 464, 464 N.W.2d 654 (1991) (and, even more daringly, through use of a pre-1983 Wis. Act 418 case, Wirth v. Ehly, 93 Wis. 2d 433, 287 N.W.2d 140 (1980)). Concurrence, ¶¶ 125, 127. The partial concurrence notes that the author of Linville was also the sole dissenter from Ervin. Concurrence, ¶ 128. If the question is whether Linville eroded any of the principles in Ervin, one would think this fact hinders rather than helps the partial concurrence's case. Regardless, there is no need to attempt to divine the meaning of Linville's authorship, because my analysis is not "squarely at odds" with Ervin. Concurrence, ¶ 125.
This is because the City of Kenosha's ("the City") actions in Ervin were arguably performed in its capacity as property owner rather than, for instance, in its capacity as a business owner. The facts underlying that case took place at a beach owned by the City of Kenosha and "staffed by four lifeguards employed and trained by the City." Ervin, 159 Wis. 2d at 469-70. In the summer of 1987, two minors drowned in the water off the beach. Id. at 468-69. The City was sued, among other things, for the alleged negligence of its lifeguards and for its own allegedly negligent hiring and failure to train them. Id. at 471-72. This court held that the City was immune from such allegations under the recreational immunity statute. Id. at 469.
Returning to my earlier hypothetical, Ervin is analogous to a circumstance in which a cliff-owner (or somebody hired by the cliff-owner) stands by and watches while a climber using the cliff for free plummets to her death. Nothing in Ervin indicates that the City was stepping outside of its role as landowner (indeed, it had not formally interviewed its lifeguards or even provided its lifeguards with "skills testing [or] lifeguard, first-aid or rescue training"). Id. at 471. Put differently, although the Ervin court seemingly rejected an "active/passive negligence distinction" with respect to landowners' negligence under the recreational immunity statute, the court said nothing about the operation of the statute when *419 landowners act in a non-proprietary capacity. See, e.g., id., at 476-77 ("If liability were imposed on landowners for negligence in failing to provide adequate safety measures, it would encourage landowners to provide no safety measures." (emphases added)). That came later, in Linville. As opposed to Ervin, wherein the City had "gratuitously" provided a few "lifeguards" without "skills testing [or] lifeguard, first-aid or rescue training" to stand post on the single parcel of property at issue, id., 471-77, the City of Janesville operated a team of paramedics which provided city-wide services and which had little to do with the ownership of the municipal pond in particular. See State v. Linville, 184 Wis. 2d 705, 720-21, 516 N.W.2d 427.
While I understand the partial concurrence's reading of Linville and find it to be a reasonable one in isolation, it is at odds with a principal expositor of Linville, Kosky v. International Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997). Justice Prosser would need to overrule a substantial amount of law to arrive at his interpretation of the recreational immunity statute.